UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TAMARA MARCHAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:14-CV-871 SNLJ NAB |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Tamara Marchand's (Marchand) application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, 1381 *et seq.* Marchand alleged disability due to attention deficit disorder (ADD), depression, and social anxiety. (Tr. 166.) This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) for a report and recommendation. [Doc. 5.] For the reasons set forth below, the undersigned recommends that Marchand's request for relief be denied.

**I.  Background**

In August 2011, Marchand applied for disability insurance benefits and supplemental security income. (Tr. 131-146.) Marchand sought an award of benefits for a closed period of disability from March 10, 2009 to January 15, 2013. (Tr. 156.) The Social Security Administration ("SSA") denied Marchand's claim and she filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 66-92.) The SSA granted Marchand's request for review. (Tr. 93-95.) An administrative hearing was held on April 23, 2013. (Tr. 23-65.)

Marchand, who was represented by counsel, testified at the hearing. On May 31, 2013, the ALJ issued a written opinion upholding the denial of benefits. (Tr. 9-19.) Marchand requested review of the ALJ's decision from the Appeals Council. (Tr. 4.) On March 4, 2014, the Appeals Council denied Marchand's request for review. (Tr. 1-3.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel,* 530 U.S. 103, 107 (2000). Marchand filed this appeal on May 7, 2014. [Doc. 1.] The Commissioner filed an Answer and the certified Administrative Transcript on July 11, 2014. [Docs. 10, 11.] Marchand filed a Brief in Support of Complaint on October 1, 2014. [Doc. 16.] The Commissioner filed a Brief in Support of the Answer on December 29, 2014. [Doc. 21.]

## II.     Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the

SSA determines the claimant's residual functional capacity (RFC) to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

### III.  ALJ's Decision

The ALJ determined that Marchand met the insured status requirements of the Social Security Act through December 31, 2014 and did not engage in substantial gainful activity from March 10, 2009 to January 15, 2013.  (Tr. 11.)  The ALJ found Marchand had the severe impairments of depression, adult ADD, and social anxiety.  (Tr. 12.)  The ALJ also found that Marchand did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 12.)  The ALJ then found that Marchand had the RFC to perform the full range of work at all exertional levels with the following non-exertional limitations:  occasional interaction with co-workers and the public and limited to work that does not require the ability to understand, remember, or carry out detailed instructions.  (Tr. 14.)  Based upon the RFC determination, the ALJ determined that Marchand could not perform any past relevant work, but there were jobs

that exist in the national economy that she can perform. (Tr. 17-18.) Finally, the ALJ concluded that Marchand was not under a disability as defined in the SSA, from March 10, 2009 through the date of the decision. (Tr. 19.)

## IV. Administrative Record

The following is a summary of relevant evidence before the ALJ.

### A. Marchand's Hearing Testimony

Marchand testified that she was forty-three years old at the time of the administrative hearing. (Tr. 26-27.) Her highest level of education was a high school diploma. (Tr. 27.) She worked until the alleged onset date of disability, March 10, 2009. (Tr. 27.) She worked at the department store Dillard's full-time for one year and a half. (Tr. 27-28.) Her job at Dillard's required her to assist customers with merchandise, actively solicit sales, unbox and display merchandise, ring customers up for the point of sale, and keep the place clean. (Tr. 28-29.) Marchand left her job at Dillard's, because she had the lowest sales in the store. (Tr. 31.) Marchand stated she did not feel comfortable going up to people and trying to push sales. (Tr. 31.)

Before she worked at Dillard's, Marchand worked as a waitress for thirteen to fourteen years for various restaurants. (Tr. 29.) Her waitressing jobs were part-time. (Tr. 30.) Marchand was not successful as a food server and it took her quite a while to figure out why. (Tr. 33.) Because of her ADD, she was not good at multitasking and her timing was always off. (Tr. 33.)

Marchand testified that after she left Dillard's, she looked for work, but the longer it went, it became harder. (Tr. 40.) Marchand began babysitting her nephew in 2011 and continued to do so at the time of the hearing. (Tr. 42.) She watched her nephew less than 10 hours a week for two days a week. (Tr. 42.) Marchand also watched an Alzheimer's patient for

five hours a day, two days a week. (Tr. 43.) She heated up meals for the patient and made sure she did not harm herself. (Tr. 44.) She was paid $8.00 an hour for both jobs. (Tr. 45.) The Alzheimer's patient eventually went to a nursing home where she passed away. (Tr. 45.) Marchand cared for the Alzheimer's patient from February or March 2011 to January 2013. (Tr. 46.)

Marchand testified that she began working for a car dealership in January 2013. (Tr. 45-46.) Her main duty is to file paperwork for an employee on maternity leave. (Tr. 46.) Marchand will take on additional duties such as answering the phone and cashiering when another employee takes vacation. (Tr. 47.) At the time of the hearing, she was worked between 6 and 12 hours per week over a couple of days. (Tr. 47.) She normally worked between three to six hours per day. (Tr. 48.) At the car dealership, she has limited interaction and just goes into a room by herself and files. (Tr. 61.) She does get behind in filing when other duties are added. (Tr. 62.)

Marchand's ADD makes her forget things, she is unable to multitask, and she is tardy. (Tr. 48-49.) Her social anxiety causes her to be self-conscious and forgetful. (Tr. 50-51.) Depression makes her unmotivated to do what she needs to do. (Tr. 53.) She has very little energy. (Tr. 53.) Regarding her personal care, she testified that she should bathe more often. (Tr. 53.) Her refrigerator and kitchen are a mess and she does not keep up with the dishes. (Tr. 54.) She reads books, approximately 3 per year. (Tr. 55.) She is able to watch TV for an hour or so. (Tr. 55.)

She testified that she does not socialize much, but sometimes hangs out with her sister and her sister's friends. (Tr. 52.) She is uncomfortable around other people. (Tr. 52.) She can interact with others at the grocery store or another place, but is too animated and makes dumb

jokes. (Tr. 52-53.) Marchand lives with her cat. (Tr. 52.) Marchand stated that her depression was worse during the four years she is claiming disability, but her ADD was about the same. (Tr. 56.)

Dr. Asher has been treating Marchand since 2008. (Tr. 57.) She began seeing Dr. Asher, because she had been previously diagnosed with ADD and depression and she wanted to continue her medication. (Tr. 57.) She has been honest with Dr. Asher, but not honest enough. (Tr. 58.) She did not convey the reality of the situation or the extent of her depression. (Tr. 58.) She does not like to tell people that she sits around and does nothing. (Tr. 58.) Marchand testified that she had been to vocational rehabilitation twice. (Tr. 59.) She did a lot of testing and then given results of positions she could possibly obtain. (Tr. 60.)

    **B.    Medical Records**

The relevant medical evidence is as follows:

    **1.    Dr. Asher**

Marchand received treatment from Dr. Jaron Asher between July 2008 and March 2013. (Tr. 242, 246-56, 259-75, 306-308, 326-27, 339-45.) Dr. Asher diagnosed Marchand with adult ADD and depression. (Tr. 242, 246-48, 252, 254-56, 259-262, 265-66, 270, 272, 326-27, 339-45.) Most of her mental status examinations were normal. (Tr. 242, 246-47, 252, 254, 262, 265-66, 270.) During most of her visits, Dr. Asher assessed her global functioning assessment score[1] (GAF) in a range from 53-58, indicating moderate symptoms or moderate impairment in social, occupational, or school functioning[2]. (Tr. 242, 246-48, 252, 255-56, 259, 261-62, 265-66, 272, 345.) Between January 2012 and December 2012, Dr. Asher found that Marchand exhibited

---

[1] Global Assessment Functioning score is a "clinician's judgment of the individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) (DSM-IV-TR).
[2] DSM-IV-TR at 34.

serious symptoms or serious impairment in social, occupational, or school functioning[3]; her GAF scores ranged from 44 to 50. (Tr. 327, 336, 340, 342-44.)

On April 4, 2013, Dr. Asher completed a Mental Residual Functional Capacity Questionnaire regarding Marchand. (Tr. 346-350.) Dr. Asher diagnosed Marchand with major depression and adult attention deficit hyperactivity disorder (ADHD). (Tr. 346.) He stated that Marchand "continues to be quite depressed" and "has no insurance which limits options for ADHD and depression treatments." (Tr. 346.) He stated that Marchand "seems to respond best to Adderall but she can't afford it." (Tr. 346.) He prescribed Strattera and Wellbutrin for Marchand and she did not have side effects. (Tr. 346.) Dr. Asher wrote that Marchand's depressed affect, poor concentration, and poor motivation demonstrated the severity of her mental impairments and symptoms. (Tr. 346.) Marchand completed a depression screen. (Tr. 346.) She scored a 20 out of a possible score of 27, which indicated moderately severe depression. (Tr. 346.)

Dr. Asher found that Marchand demonstrated the following signs and symptoms: anhedonia, decreased energy, feelings of guilt or worthlessness, mood disturbance, difficulty thinking or concentrating, persistent disturbances of mood or affect, emotional withdrawal or isolation, and memory impairment. (Tr. 347.) Dr. Asher opined that Marchand had limited, but satisfactory ability to remember work-like procedures; understand, remember, and carry out very short and simple instructions; maintain attention for two hour segment; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and be aware of normal hazards and take appropriate precautions. (Tr. 348.) Dr. Asher opined that Marchand was seriously limited,

---

[3] DSM-IV-TR at 34.

but not precluded from the following aptitudes for unskilled work: maintain regular attendance and be punctual within customary, usual strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday or workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; deal with normal work stress; understand, remember and carry out detailed instructions; set realistic goals or make plans independently of others; deal with the stress of semiskilled and skilled work; and interact appropriately with the general public. (Tr. 348-49.) Dr. Asher also found that Marchand was unlimited or very good in her ability to adhere to basic standards of neatness and cleanliness and possessed limited, but satisfactory ability to maintain socially appropriate behavior, travel in unfamiliar places, and use public transportation. (Tr. 349.) Dr. Asher opined that Marchand did not have a low IQ or reduced intellectual function, but her depression affects her perception of pain making it more intensely felt. (Tr. 350.) Finally, Dr. Asher estimated that Marchand would miss more than four days per month of work due to her impairments or treatment. (Tr. 350.)

  **2. Rocky Smith**

Marchand visited Rocky Smith, licensed clinical social worker three times, twice in June 2008 and once in October 2009. (Tr. 258, 276-278.) Mr. Smith diagnosed her with major depression, adult ADHD, and social anxiety. (Tr. 258, 276, 278.) She also attended two 105 minute Mindfulness Based Cognitive Behavioral Stress Management group therapy sessions in October 2009. (Tr. 258.)

9

### 3. Deborah Moorman, LCSW

Marchand received treatment from licensed clinical social worker Deborah Moorman between November 2012 and March 2013. (Tr. 304-305, 309-312, 319-20, 331-334, 337.) Deborah Moorman diagnosed Marchand with adult ADD and major depression. (Tr. 333.) Marchand's mental status examinations were normal during her visits with Ms. Moorman. (Tr. 304-305, 309, 311, 319, 333.) At Marchand's initial assessment in November 2012, Moorman opined that Marchand had serious symptoms or serious impairment in social, occupational, or school functioning, with a GAF score of 44. (Tr. 333.)

### 4. Tamarac E. Blum, LMSW

Marchand attended four psychotherapy sessions with Tamara Blum, a licensed social worker in March and April 2011. (Tr. 286-289.) On September 22, 2011, Blum wrote a letter describing her diagnoses and analysis of Marchand's impairments. (Tr. 286.) Blum diagnosed Marchand with ADD, depression, and social anxiety. (Tr. 286.) Blum described Marchand's most difficult symptoms as lack of energy, nervousness, and lost productivity, with 99% of her daily living activities lost to symptoms of anxiety or depression. (Tr. 286.) Blum stated that Marchand spoke repeatedly and intensely about the injustices done to Michael Jackson, which seemed to hurt Marchand on a personal level. (Tr. 286.) Blum also described Marchand as easily distracted. (Tr. 286.) Blum stated that Marchand was unable to stay in treatment long enough for Blum to assess any real benefits from their work together. (Tr. 286.)

## C. Vocational Expert Interrogatory

On April 29, 2013, vocational expert Delores Gonzalez answered a vocational interrogatory from the ALJ. (Tr. 228-34.) Gonzalez found that Marchand's work experience in

the past fifteen years included light, semi-skilled work as a retail sales clerk and waitress and medium semi-skilled work as a babysitter. (Tr. 228.) Gonzalez opined that a hypothetical person of Marchand's age, education, and work experience, who could perform a full range of work at all exertional levels and was limited to occasional interaction with coworkers and the public could not perform Marchand's past relevant work. (Tr. 229.) The hypothetical person would be able to perform work in the national economy as an addresser, document preparer, and mail sorter. (Tr. 230.) Gonzalez also opined that a hypothetical person of Marchand's age, education, and work experience, who could perform a full range of work at all exertional levels and was limited to occasional interaction with coworkers and the public and was limited to work that does not require the ability to understand, remember, or carry out detailed instructions could not perform Marchand's past relevant work. (Tr. 231.) Gonzalez stated the hypothetical person could perform the same jobs identified in response to the first hypothetical: addresser, document preparer, and mail sorter. (Tr. 232.) Finally, Gonzalez stated that a hypothetical individual with Marchand's age, education, and work experience, who could perform a full range of work at all exertional levels and was limited to occasional interaction with coworkers and the public; limited to work that does not require the ability to understand, remember, or carry out detailed instructions; unable to satisfactorily maintain regular attendance and be punctual within customary, usual strict tolerances; unable to satisfactorily sustain an ordinary routine without special supervision; unable to satisfactorily work in coordination with or proximity to others without being unduly distracted; unable to satisfactorily complete a normal workday and workweek without interruptions from psychologically based symptoms; unable to satisfactorily accept instructions and respond appropriately to criticism from supervisors; unable to satisfactorily respond appropriately to changes in a routine work setting; and unable to

11

satisfactorily deal with normal work stress could not perform Marchand's past relevant work or any jobs in the national economy. (Tr. 233-34.)

## V.  Discussion

Marchand presents two issues for review. Marchand alleges that the ALJ should have given the opinions of her treating physician, Dr. Asher, controlling weight and discussed the factors for evaluating opinions under 20 C.F.R. §§ 404.1527, 416.927. She also contends that the ALJ erred by giving little weight to the opinions of her mental health counselors, Moorman and Blum.

### A. Treating Physician's Opinion

All medical opinions, whether by treating or consultative examiners are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c); 416.927(c). "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always

give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

In making a disability determination, the ALJ shall always consider the medical opinions in the case record together with the rest of the relevant evidence in the record. 20 C.F.R. §§ 404.1527(b), 416.927(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). "[T]he ALJ is not qualified to give a medical opinion but may rely on medical evidence in the record." *Willcockson v. Astrue*, 540 F.3d 878, 881 (8th Cir. 2008). The ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). The RFC determination is based on all of the evidence in the medical record, not any particular doctor's treatment notes or medical opinion. *Pearsall*, 274 F.3d at 1217 (8th Cir. 2001).

In this case, the ALJ stated that he gave some weight to the medical source statement prepared by Dr. Asher. (Tr. 17.) The ALJ found that "Dr. Asher's conclusions that claimant had satisfactory abilities to perform simple work activities at a consistent pace are entitled to great weight as they are wholly consistent with the record." (Tr. 17.) The ALJ agreed with Dr. Asher's findings that Marchand had limitations in her ability to work in coordination with others, interact with supervisors and the public, respond to changes, and deal with work stresses. (Tr. 17.)

Plaintiff contends that the ALJ should have given Dr. Asher's opinion controlling weight and the ALJ failed to discuss the factors for evaluating opinions under 20 C.F.R. §§ 404.1527, 416.927. The ALJ did not perform a "factor-by-factor" analysis of Dr. Asher's opinion evidence, however, he stated that he considered those factors and explained his rationale in a manner that allows the Court to follow the line of reasoning, including the amount of weight

13

given to the evidence. (Tr. 14, 17.); *see Nishke v. Astrue*, 878 F.Supp.2d 958, 984 (E.D. Mo. 2012) (ALJ's failure to perform factor-by-factor analysis of opinion evidence in written opinion not erroneous). The ALJ mentioned the treating and examining relationship between Marchand and Dr. Asher; supportability of his opinion with medical signs, laboratory findings, and explanation; consistency with the record as a whole; and other factors that would support or detract from the opinion. (Tr. 17.) Therefore, the absence of a factor-by-factor analysis under 20 C.F.R. §§ 404.1527, 416.927 does not require reversal.

Second, the ALJ is not required to adopt a treating physician's medical opinion in whole or in part, and must consider the treating physician's medical opinion in light of all of the other evidence in the record. *See Pearsall*, 274 F.3d at 1217. As an initial matter, Dr. Asher's medical opinion finds that Marchand has some limitations, but he does not opine that she is precluded from doing any work-related activities. (Tr. 348-49.) Although, Dr. Asher's opinion states that Marchand has memory impairment and difficulty thinking and concentrating, this finding is not reflected in his treatment notes. Also, during the alleged closed period of disability Marchand had significant daily activities, including working as a caretaker for a young child and an Alzheimer's patient. After a review of Dr. Asher's treatment notes, his opinion, and the other evidence in the record as a whole, the undersigned finds that the ALJ did not err in the weight given to Dr. Asher's opinion.

### B. Mental Health Counselors' Opinions

Next, Marchand contends that the ALJ erred in according little, if any, weight to the opinions of her mental health counselors Blum and Moorman. Marchand states that the ALJ should have discussed the weight given to their opinions. First, the Court notes that under social security regulations, neither Blum or Moorman wrote an "opinion" regarding Marchand and

neither are acceptable medical sources that can provide an opinion. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite her impairments and her physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

> Social Security separates information sources into two main groups: *acceptable medical sources* and *other sources*. It then divides *other sources* into two groups: *medical sources* and *non-medical sources*. *Acceptable medical sources* include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists. According to Social Security regulations, there are three major distinctions between acceptable medical sources and the others: (1) Only acceptable medical sources can provide evidence to establish the existence of a medically determinable impairment, (2) only acceptable medical sources can provide medical opinions, and (3) only acceptable medical sources can be considered treating sources

*Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (emphasis in original) (internal citations omitted). Medical sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists." 20 C.F.R. §§ 404.1513(d)(1), 416.913(d). "Information from these other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose." SSR 06-03P, 2006 WL 2329939. "[I]nformation from such other sources, [however], may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function. *Id.*; 20 C.F.R. §§ 404.1513(d), 416.913(d). "The case record should reflect the consideration of opinions from medical sources who are not acceptable medical sources . . . who have seen the claimant in their professional capacity." SSR 06-03p.

The ALJ mentioned in his opinion that Marchand had been treated by Blum and Moorman and cited the exhibits containing their treatment records. (Tr. 12.) The ALJ also noted the diagnoses given by Blum and information Marchand gave to Moorman. (Tr. 12, 15.) The ALJ's opinion indicates that he was aware of and considered the treatment records from Blum and Moorman. Blum's letter dated September 22, 2011, detailed Marchand's subjective complaints and the use of mediation to calm her. (Tr. 286.) Blum did not believe that Marchand was in treatment long enough to benefit from the treatment. (Tr. 286.) Blum and Moorman's treatment records and letter did not specifically address Marchand's ability to perform work-related activities, but they did provide a perspective on the severity of Marchand's impairments and how they affect her ability to function. It should be noted that the ALJ is not required to cite to every piece of evidence in the record. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (an ALJ's failure to cite to specific evidence does not indicate that such evidence was not considered). Therefore, the undersigned finds that the ALJ properly considered Moorman and Blum's treatment records and letter.

## VI. Conclusion

Based on the foregoing, the undersigned finds that the disability determination was supported by substantial evidence in the record as a whole and Plaintiff's request for relief should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the request for relief in Plaintiff's Complaint and Brief in Support of Complaint be **DENIED**. [Docs. 1, 16.]

**IT IS FURTHER RECOMMENDED** that judgment be entered in favor of the Defendant in a separate order.

16

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

Dated this 17th day of June, 2015.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE